UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**FILED**

**SEP 2 3 2011**

CLERK

| | | |
|---|---|---|
| SIDNEY JOHNSON, | * | CIV 10-4052-RAL |
| | * | |
| Plaintiff, | * | |
| | * | |
| | * | OPINION AND ORDER |
| -vs- | * | GRANTING MOTION FOR |
| | * | ATTORNEY FEES AND COSTS |
| MICHAEL J. ASTRUE, | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

## I. INTRODUCTION

Plaintiff Sidney Johnson has filed a motion for attorney's fees (Doc. 20) under the Equal

Access to Justice Act ("EAJA") following this Court's Judgment and Order of Remand (Doc.

18), which vacated the decision of the Commissioner of Social Security ("the Commissioner")

denying Johnson's application for Social Security Disability Insurance ("SSDI") benefits.

Johnson seeks $7,894.03[1] in attorney's fees, including $446.83 in sales tax, and costs in the

amount of $45.24.  Johnson assigned any court-awarded EAJA attorney fees to his attorney when

he hired his attorney.  (Doc. 20-4, Fee Agreement; see also Doc. 20-5, Plaintiff's Affidavit and

Assignment of EAJA fees).  After the Commissioner opposed the motion for attorney's fees,

Johnson filed a supplemental motion for award of attorney's fees (Doc. 25) seeking an additional

$791.70 in attorney's fees, including $47.50 in sales tax, for work related to Johnson's reply

brief.

---

[1] The Commissioner raised no issue with the hourly rate or amount of time billed by
Johnson's attorney.  The Court independently reviewed the rate and time billed and finds them
appropriate under 28 U.S.C. § 2412(d)(2)(A)(ii) and related provisions given the nature of the
underlying case.

The Commissioner opposed awarding fees to Johnson's attorney for three reasons. First, the Commissioner asserted that Johnson's motion was premature. Second, the Commissioner argued that the Commissioner's denial of benefits was substantially justified, thereby preventing award of a fee. Third, the Commissioner maintained that, if attorney's fees are to be awarded, those fees are to be paid directly to Johnson rather than his attorney. For the reasons explained below, this Court grants Johnson's motion and supplemental motion.

## II. FACTUAL BACKGROUND[2]

Johnson was born December 14, 1960, and completed high school. (AR 35).[3] He has autism, an anxiety disorder, and a depressive disorder. He was a janitor from 1984 until his termination in 2002 at the age of 41. (AR 40-41). Following termination from that position, Johnson worked part-time at a Hy-Vee grocery store and a church. (AR 37-38). Johnson received both wage subsidies and special accommodations from the church. Before the Administrative Law Judge ("ALJ"), Johnson reported leg length discrepancy, back pain, arthritis in his feet, knee discomfort, autism, and constant shoulder pain that has been helped somewhat by physical therapy and electric shock therapy. (AR 41-45).

Dr. William Dendinger, M.D. is Johnson's primary care physician. Dr. Dendinger has treated Johnson for complaints of periodic pain in his arms and legs as well as back discomfort. From 2005 to 2007, Dr. Dendinger, as well as Dr. H. Lars Aanning, treated Johnson for a hernia. (AR 268-71, 292). In 2007, Dr. Dendinger prescribed medicine for Johnson's depression, and in

---

[2]A more complete recitation of the facts are in this Court's Opinion and Order Vacating and Remanding the Commissioner's Decision. (Doc. 17).

[3]Citations to the administrative appeal record will be cited as "AR" followed by the page number or numbers.

-2-

2009, noted that Johnson's autism was a disabling factor. (AR 382, 392).

Johnson saw Dr. Scott Shindler, a podiatrist, due to pain in both feet. (AR 374-75). Dr. Shindler ultimately determined that Johnson should be limited to 15 to 20 minutes standing at one time and to a total of two hours standing in any work day. (AR 376-77).

Johnson also saw Dr. Galen Van Kley, a clinical psychologist. (AR 254). Dr. Van Kley noted Johnson's intellectual limitations and emotional struggles and believed that Johnson might have a disability based on the Department of Rehabilitative Services criteria. (AR 258). Johnson met with Brittany Schmidt, the Director of the Autism Spectrum Disorders Program Clinic at the Sanford School of Medicine Center for Disabilities, in 2007. (AR 349-52). Schmidt determined that Johnson met the diagnostic criteria for autism and that Johnson had marked restrictions of activities of daily living and maintaining social functioning. (AR 351, 379).

State agency mental health experts twice assessed Johnson's mental limitations. In 2007, Dr. Jerry Buckoski found that despite moderate limitations, Johnson has the ability to work as shown by his past performance as a janitor. (AR 311-13). In late 2007, after the diagnosis of autism was added to Johnson's file, Dr. Stephanie Fuller found moderate limitations and concluded that Johnson was mentally capable of substantial gainful work activity. (AR 368-70). State agency physicians completed two assessments of Johnson's physical limitations and determined him to have no physical limitations. (AR 316-23, 373).

The ALJ applied the five-step sequential process mandated under 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determined that Johnson had engaged in substantial gainful activity ("SGA"). (AR 19). At step two, the ALJ found that Johnson had an organic mental disorder, autism, a depressive disorder, and an anxiety disorder. (AR 20). The ALJ

-3-

found that these impairments were severe. (AR 20). The ALJ found that Johnson's leg and

shoulder pain were not severe. (AR 20). The ALJ concluded that Johnson's mental impairments

did not meet the medical criteria for listings of Organic Mental Disorders or Autism Disorder.

(AR 20). The ALJ found that Johnson could perform other jobs in significant numbers in the

national economy. (AR 26-27). In ultimately denying Johnson disability benefits, the ALJ,

referring to the SGA finding, stated:

> [T]his is the major basis for this denial, claimant performed substantial gainful activity in
> both 2004 and 2007. This ability, as well as the earnings generated in 2003, 2005, 2006,
> and into 2008 clearly reflects a capacity for full-time work within the parameters of the
> mental residual function capacity noted above.

(AR 25).

## III. DISCUSSION

### A. Whether the Motion for Attorney's Fees is Premature

The Commissioner asserted that the motion for attorney's fees is premature. Under 28

U.S.C. § 2412(d)(1)(B), "[a] party seeking an award of fees and other expenses shall, within

thirty days of final judgment in the action, submit to the court an application for fees and other

expenses." Chapter 28 U.S.C. § 2412(d)(2)(G) defines "final judgment" to mean "a judgment

that is final and not appealable." Under 28 USC § 2107(b), the government has sixty days to file

an appeal after the decision is issued. In this case, judgment entered on March 30, 2011, and

would have become final and non-appealable sixty days later. The motion for attorney's fees was

filed on April 15, 2011.

When a motion for attorney's fees is filed before the judgment is final for the purpose of

the EAJA, the appropriate course of action is for the district court "to refrain from passing on the

-4-

question of attorney fees until the litigation is final for the purposes of the EAJA." Harmon v. United States, 101 F.3d 574, 587 (8th Cir. 1996). Because the appeal deadline now has passed and the Commissioner has not appealed, Johnson's motion no longer is premature.

**B. Whether The Government's Position Was Substantially Justified**

The Commissioner's argument that the denial of SSDI benefits to Johnson was "substantially justified" deserves greater discussion. Under the Equal Access to Justice Act, the prevailing party in a proceeding for judicial review of federal agency action is entitled to legal fees and costs "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); see also Goad v. Barnhart, 398 F.3d 1021, 1025 (8th Cir. 2005). In this context, "substantially justified" means "justified to a degree that could satisfy a reasonable person" or having a "reasonable basis in law and fact." Koss v. Sullivan, 982 F.2d 1226, 1229 (8th Cir. 1993) (quoting Pierce v. Underwood, 487 U.S. 552, 565(1988)). The standard is whether the Commissioner's position is well-founded in law and fact and "solid though not necessarily correct." Lauer v. Barnhart, 321 F.3d 762, 764 (8th Cir. 2003) (quoting Friends of Boundary Waters Wilderness v. Thomas, 53 F.3d 881, 885 (8th Cir. 1995)); see also Goad, 398 F.3d at 1025 ("A position enjoys substantial justification if it has a clearly reasonable basis in law and fact.") (citing Brouwers v. Bowen, 823 F.2d 273, 275 (8th Cir. 1997)). Thus, the Government's position in "denying benefits can be substantially justified even if the denial is unsupported by substantial evidence on the record as a whole." Welter v. Sullivan, 941 F.2d 674, 676 (8th Cir. 1991) The Government bears the burden of "proving that both [its] pre-litigation conduct, including the ALJ's decision itself, and [its] litigation position were substantially justified."

-5-

Stewart v. Astrue, 561 F.3d 679, 683 (7th Cir. 2009); see also Lauer, 321 F.3d at 764 ("The
Secretary bears the burden of proving the denial of benefits was substantially justified.") (quoting
Welter, 941 F.2d at 676).

   This case presents a close call on whether the Commissioner has met his burden to show
that his position was "substantially justified." A careful review of the record reveals that the
ALJ's errors, when considered in combination, justify an award of attorney's fees.

   An ALJ's failure to follow agency regulations or circuit precedent can support a finding
that the Commissioner was not "substantially justified" in opposing a party's claim for Social
Security benefits. See Golembiewski v. Barnhart, 382 F.3d 721, 724 (7th Cir. 2004)
(government's position was not substantially justified where ALJ "violated clear and long
judicial precedent and violated the Commissioner's own Ruling and Regulations."); Koss, 982
F.2d at 1229 (awarding attorney's fees where ALJ "failed to follow established precedent by
failing to pursue the psychological aspect of [plaintiff's] disability, obtain the medical records of
a treating physician, or analyze [plaintiff's] claim of pain under Polaski."); Trundle v. Bowen,
830 F.2d 807, 810-11 (8th Cir. 1987) (concluding that the Government's position was not
substantially justified based, in part, on the ALJ's failure to follow Polaski guidelines); Cornella
v. Schweiker, 728 F.2d 978, 985 (8th Cir. 1984) ("It was not reasonable for the Secretary to
ignore her own regulations."). When a person makes a claim for Social Security benefits,
regulations require the Social Security Administration to evaluate every medical opinion it
receives, regardless of source. 20 C.F.R. § 404.1527(d). "[A]n ALJ should 'give good reasons'
for discounting a treating physician's opinion." Dolph v. Barnhart, 308 F.3d 876, 878-89 (8th
Cir. 2002) (quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000)); Reed v. Barnhart, 399

F.3d 917, 921 (8th Cir. 2005) ("[R]egulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation.") (quoting 20 C.F.R. § 404.1527(d)(2)). If a treating physician's opinion is not given controlling weight under 20 C.F.R. § 404.1527(d)(2), it must be weighed considering the factors in 20 C.F.R. § 404.1527(d)(2)-(6). See Shontos v. Barnhart 328 F.3d 418, 426 (8th Cir. 2003). "The Eighth Circuit Court of Appeals requires an ALJ to consider all evidence in the record when determining a claimant's residual functional capacity." Potter v. Astrue, No. 07-05050, 2008 U.S. Dist. LEXIS 39928, at *10 (W.D. Mo. 2008) (citing Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001)). Under 20 C.F.R. § 404.1527(d)(2)-(6), when deciding the weight given to any medical opinion that is not given controlling weight, the ALJ must consider each of the following factors: (1) the examining relationship; (2) the treatment relationship, including length of treatment, frequency of examination, and the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other factors brought to the ALJ's attention tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

Here, the ALJ—both when analyzing whether Johnson's leg and foot pain constituted a "severe" impairment and when determining Johnson's RFC—violated 20 C.F.R. § 404.1527(d)(2) when he failed to give good reasons for affording no weight to the opinion of Dr. Shindler, Johnson's podiatrist. The Commissioner submitted that his position was substantially justified because there is evidence in the record that conflicts with Dr. Shindler's opinion. In support of this argument, the Commissioner cited to Eighth Circuit cases holding that an ALJ may discount the opinion of a treating physician when the opinion is inconsistent with other substantial medical evidence. However, the basis for reversal and remand, with

respect to Dr. Shindler's opinion, was the ALJ's failure, contrary to § 404.1527(d)(2), to evaluate and give good reasons for rejecting Dr. Shindler's opinion. The Commissioner cannot cure the ALJ's failure to follow agency regulations by citing to the record—rather than the ALJ's opinion itself—and performing the analysis the ALJ should have conducted in the first instance. See Smith v. Astrue, No. 08-CV-750, 2010 WL 2900332, at *2 (E.D. Wis. July 20, 2010) ("With respect to the ALJ's evaluation of the plaintiff's treating physician, the court notes that much of the government's brief is devoted to citations of evidence in the record that supports the ALJ's ultimate conclusion, but there is a dearth of citation to the actual decision of the ALJ. The court finds that the government is engaging in post-hoc rationalization of the ALJ's decision which does not suffice to show that the government's position was substantially justified."); Jenkins v. Astrue, 544 F. Supp. 2d 736, 742 (N.D. Ind. 2008) ("[N]o amount of post-hoc rationalization by the Commissioner can render the government's position substantially justified.").

The ALJ's failure to follow agency regulations weighs against a finding of substantial justification. See Brunel v. Comm'r of Soc. Sec. Admin., No. 00-1142, 2000 WL 1815946, at *2 (1st Cir. Dec. 11, 2000) (finding no substantial justification where ALJ, among other errors, violated regulations by failing to explain why he credited part of treating source's opinion while disregarding portion of opinion that supported plaintiff's claim of disability); Pyatt v. Comm'r of Soc. Sec., 771 F. Supp. 2d 891, 899-00 (S.D. Ohio 2011) (Commissioner's position was not substantially justified where ALJ's decision contained only brief references to selective findings within treating physicians opinion, and did not state the weight the ALJ gave to the treating physician's opinion); McNelis v. Comm'r of Soc. Sec., No. 08-12529, 2010 WL 5866250, at *2 (E.D. Mich. Oct. 20, 2010) (Commissioner was not substantially justified in "defending a

-8-

decision that failed to follow well-established procedures and precedent" where the ALJ failed to set forth "good reasons" for discounting treating physician's opinion); Harris v. Astrue, No. 1:08-cv-1893, 2009 WL 1684576, at *2 (N.D. Ill. June 15, 2009) (Government's position was not substantially justified where ALJ excluded treating physician's opinion and gave no reason for doing so even though opinion "may not have been probative."); Fisk v. Astrue, No. 3:05-cv-145, 2009 WL 161335, at * 3 (S.D. Ohio Jan. 22, 2009) ("[T]he Commissioner's position in support of the ALJ's decision lacked a reasonable basis in law because it overlooked the significance of [the] mandatory procedural requirement" of the good-reason rule.).

The ALJ, when determining Johnson's RFC, further violated § 404.1527 when he failed to state what weight he assigned to Dr. Van Kley's evaluation of Johnson. Dr. Van Kley's evaluation contained critical information concerning Johnson's intellectual limitations, difficulty using common sense to recognize social conventions, trouble problem-solving in novel situations, and anxiety. (AR 257). Under the circumstances, the ALJ should have discussed what weight, if any, he gave to Dr. Van Kley's opinions. See Pearsall v. Massanari, 274 F.3d at 1217-18 ("It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations."). The failure of the ALJ to do so militates in favor of awarding attorney's fees. See Hawke v. Astrue, No. 3:07-CV-108, 2009 WL 961783, at *3 (S.D. Ohio Apr. 8, 2009) (Commissioner's position was not substantially justified where ALJ did not evaluate the opinion of a non-treating physician and failed to provide reasons for rejecting treating physician's opinion even though there was other evidence in the record that may have supported ALJ's decision to reject the opinion).

The ALJ also mischaracterized evidence relating to Johnson's legs, feet, shoulders, and upper extremities. When determining whether Johnson's claim of upper extremity and shoulder pain constituted a severe impairment, the ALJ concluded:

> [C]laimant's allegations of upper extremity and shoulder pain are not medically determinable impairments. The record is void of a diagnosis related to his pain, nor does the record indicate the claimant has sought any treatment for such pain.

(AR 20). The ALJ's findings were factually incorrect because evidence in the record documented that Johnson suffers from an upper extremity and shoulder condition that is medically determinable. In response to Johnson's motion for attorney's fees, the Commissioner contended that any existing pain was not severe and Johnson was able to move well enough to perform job requirements. This argument, however, does not remedy the ALJ's factually erroneous findings that were used as a basis for the Commissioner's denial of benefits to Johnson. No substantial justification existed for the ALJ's failure—based on factually erroneous findings—to evaluate upper extremity and shoulder conditions, as the record contained a diagnosis and several occasions of Johnson seeking treatment. See Golembiewski, 382 F.3d at 724-25 (government's position was not substantially justified where, among other errors, ALJ violated precedent and administrative regulations, and mischaracterized or ignored important medical evidence); Evans v. Sullivan, 928 F.2d 109, 112 (4th Cir. 1991) (reversing denial of attorney's fees where the ALJ committed numerous errors including a failure to state reasons for his rejection of medical evidence from the plaintiff's treating physician, a misreading of medical reports, and a failure to discuss all of plaintiff's ailments).

On the issue of Johnson's reported leg and foot conditions, the Commissioner advanced

-10-

the same rationale as the ALJ's for denying benefits: "Johnson sought very little or no treatment for leg pain." (Doc. 23, at 6). The government does not offer substantial justification for the ALJ's failure to fully consider undisputed evidence that Johnson did seek treatment for leg pain. The ALJ apparently disregarded this evidence. This evidence—along with the Commissioner's acknowledgment that Dr. Shindler found Johnson to have a limited range of motion and some arthritis as well as severe pronation upon gait testing and some pain to the plantar aspect of his right and left arch, that Johnson only could stand for three to four hours before his feet throbbed, and that Johnson only was able to walk for two blocks before needing to stop and rest—weighs against a finding of substantial justification. (Doc. 23, at 7).

This Court reversed the ALJ's decision in part because it did not take into account wage subsidies in considering whether Johnson engaged in SGA and the ALJ's error was not harmless in that regard. (Doc. 17, at 19). Because the wage subsidies were an important part of determining wage-earning capabilities, the ALJ's disregard of the wage subsidies was not harmless error. Indeed, the ALJ's decision stated, "this is the major basis for this denial, claimant performed substantial gainful activity . . ." (AR 25). In this case, the Government cannot meet its burden of proving substantial justification by arguing that an error contributing to the "major basis" for denial of benefits was harmless.

Finally, the ALJ was not substantially justified in his credibility assessment concerning Johnson's subjective complaints under Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). This Court found that the ALJ's credibility assessment was inextricably intertwined with the legally erroneous SGA determination and was not sufficiently clear. (Doc. 17, at 31). A review of the standard for an ALJ's consideration of the Polaski factors illustrates how the government's

-11-

position was not substantially justified.

An ALJ's credibility finding may be upheld when it is "supported by good reasons and substantial evidence." Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006). Factors to be considered by the ALJ in evaluating subjective complaints of pain and other symptoms include the five "Polaski factors:"

1. the claimant's daily activities;
2. the duration, frequency, and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness, and side effects of medication; and
5. functional restrictions.

Polaski v. Heckler, 739 F.2d at 1322. An ALJ "is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004). Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints. Polaski, 739 F.2d at 1322. An ALJ may discount subjective complaints of pain or other symptoms if inconsistencies exist in the evidence as a whole. Id.; see also Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).

Although an ALJ need not explicitly discuss each Polaski factor, an ALJ who rejects subjective complaints "must make an express credibility determination explaining the reasons for discrediting the complaints." Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (internal citations omitted). The credibility determination "is sufficient if [the ALJ] acknowledges and considers [the Polaski] factors before discounting a claimant's subjective complaints." Goff v. Barnhart, 421 F.3d 785, 791-92 (8th Cir. 2005) (quoting Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004)). The Commissioner's regulations require that "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in

-12-

the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Failure by an ALJ to properly comply with Polaski constitutes reversible error. See Pettijohn v. Heckler, 759 F.2d 669 (8th Cir. 1985).

In this case, the ALJ's decision did not expressly consider the Polaski factors. Johnson argued that the ALJ's credibility finding consisted merely of a conclusory statement: ". . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 26). The Commissioner correctly noted that the ALJ's conclusory statement was preceded by consideration of Johnson's subjective complaints and a credibility assessment exploring—though not expressly—the Polaski factors on AR 22 through 26. This credibility assessment was intertwined with the legally erroneous SGA determination on AR 25, and the ALJ expressly considered the improper SGA determination in assessing Johnson's credibility. The record is unclear whether the ALJ would have made the same ruling absent the erroneous SGA determination—which the ALJ stated was "the major basis for this denial"—and this Court could not uphold the administrative ruling based on reasons not articulated by the ALJ.

Under the circumstances, the ALJ's ruling was not sufficiently clear to allow an informed review by this Court of whether a complete and properly rendered credibility determination concerning Johnson's subjective complaints would have resulted in denial of Johnson's claim. Because of the deficiencies in the ALJ's decision, the Government cannot meet its burden of proving that its position in denying Johnson benefits or defending the ALJ's decision was

-13-

substantially justified. See Granger v. Astrue, No. 1:06-cv-0213-LJM-WTL, 2008 WL 344531, at *2-3 (S.D. Ind. Feb. 7, 2008) (Government was not substantially justified in defending Commissioner's decision where ALJ failed to consider the impact of plaintiff's diverticulitis when determining plaintiff's RFC, ignored evidence of plaintiff's mental limitations, and failed to consider evidence from a treating physician regarding plaintiff's level of pain); Purvis v. Barnhart, No. 1:04-CV-2124 DFH VSS, 2006 WL 3354518, at * (S.D. Ind. Nov. 16, 2006) (Government's position was not substantially justified where ALJ failed to comply with agency regulations, did not address substantial medical evidence showing plaintiff's limitations, and overlooked evidence relevant to plaintiff's credibility).  Therefore, Johnson is entitled to an award of attorney's fees under 28 U.S.C. § 2412(d)(1)(A).

**D. Whether the Fees May Be Paid Directly to Johnson's Attorney**

The Commissioner argued that, notwithstanding Johnson's assignment of payment of attorney's fees to his lawyer, attorney's fees must be paid to Johnson only and not to Johnson's attorney.  The Commissioner relied on Astrue v. Ratliff, 130 S. Ct. 2521, 2524 (2010) in support of his argument.  In Ratliff, the United States Supreme Court held that an EAJA award is payable to the claimant rather than an attorney and thus is subject to an offset for any pre-existing federal debt owed by the claimant.  The Court in Ratliff did not address whether, when a claimant owes no federal debt and has assigned payment of any EAJA fees to counsel, the payment may be directed to the attorney.

The Commissioner's position in this case is that Ratliff precludes this Court from awarding attorney's fees directly to Johnson's lawyer.  In several post-Ratliff cases, the Commissioner has taken the opposite position from what he takes here and has acknowledged

-14-

that an assignment of payment of attorneys fees under the EAJA should be honored when the

client has no outstanding federal debt. For example, in Wigginton v. Astrue, No. 3:09CV00101,

2011 U.S. Dist. LEXIS 39233 (E.D. Ark. April 4, 2011), the Commissioner proposed that:

> After the Court issues the order for EAJA fees, [the Commissioner]
> will contact the United States Department of Treasury to inquire
> whether Plaintiff owes a debt subject to the administrative offset. If
> the Plaintiff does not owe a debt to the United States Government,
> Defendant will issue a check payable to Plaintiff's attorney.

Id. at *2-3; see also Coleman v. Astrue, Case No. 4:10 CV 1871, 2011 U.S. Dist. LEXIS 22017,

at *3 (E.D. Mo. March 2, 2011) (Commissioner agreed "that payment [under EAJA] would be

made to Plaintiff's attorney if no debt is owed by Plaintiff to the United States that is subject to

offset."); Hood v. Astrue, No. 4:09CV3245, 2011 U.S. Dist. LEXIS 4174 (D. Neb. Jan. 14,

2011).

     In the immediate aftermath of Ratliff, district courts split on whether EAJA fees must

always be paid to the client or whether an assignment of EAJA fees is to be honored if the client

owes no federal debt. Compare Rathke v. Astrue, No. 08-5084, 2010 U.S. Dist. LEXIS 86851

(D.S.D. Aug. 23, 2010) (holding that attorney's fees always go directly to client, not attorney);

Hinkel v. Astrue, No. C09-1048, 2010 U.S. Dist. LEXIS 77469 (N.D. Iowa July 30, 2010)

(holding that attorney's fees go directly to clients and cannot be assigned to a lawyer) with

Ledford v. Astrue, No. 1:07cv334, 2010 U.S. Dist. LEXIS 137397 (W.D.N.C. Dec. 16, 2010)

(holding that a lawyer can receive attorney's fees directly if fees were assigned to the lawyer and

the client has no outstanding federal debt). The only federal court of appeals to address the

question to date is the Seventh Circuit. See Matthews-Sheets v. Astrue, No. 10-3746, 2011 WL

3437029 (7th Cir. Aug. 5, 2011). The Seventh Circuit acknowledged that portions of Ratliff

-15-

could be read as suggesting that district courts must *always* pay attorney's fees directly to the plaintiff. But the Court ultimately found that when a plaintiff assigns her right to attorney's fees to her lawyer, "the only ground for the district court's insisting on making the award to the plaintiff is that the plaintiff has debts that may be prior to what she owes her lawyer." Id. at *5. In recent months, most district courts confronting the issue, including several within the Eighth Circuit, have held that a lawyer may receive attorney's fees directly as long as the fee was assigned to the lawyer and the client does not have outstanding federal debt. See, e.g., Byers v. Astrue, No. 1:09-CV-01579-TAB-JMS, 2011 WL 2472992 (S.D. Ind. June 22, 2011) ("Ratliff's holding is limited to a client in debt to the government. Thus, an EAJA fee award should be made directly to the attorney when the prevailing party client does not owe a debt to the government and has assigned the fee to counsel.") (internal marks and citations omitted); Cowart v. Comm'r of Soc. Sec., No. 08-14887, 2011 WL 2441468 (E.D. Mich. June 13, 2011); Wigginton, 2011 U.S. Dist. LEXIS 39233, at *2-3; Coleman, 2011 U.S. Dist. LEXIS 22017, at *3; Parker v. Astrue, No. 09-cv-05240, 2011 U.S. Dist. LEXIS 26120 (W.D. Ark. Feb. 24, 2011); Hood, 2011 U.S. Dist. LEXIS 4174, at *2. Surprisingly, none of these cases contain a detailed analysis of the question.

A decision from within the District of South Dakota, however, supports the Commissioner's position in this case that, despite the assignment and lack of any apparent federal debt owed by Plaintiff, payment must be made to Plaintiff rather than his attorney. Rathke, 2010 U.S. Dist. LEXIS 86581. In Rathke, the Court confined its discussion of the issue to one paragraph and cited exclusively to Ratliff. Id. at *11. At the time of the Rathke decision in 2010, the Court did not have the benefit of the mounting authority permitting payment to the

-16-

attorney when the prevailing plaintiff has no federal debt and has assigned any EAJA fee to counsel. Because Rathke conflicts with how most federal courts have ruled on the question, this Court will address the question in greater depth than any court to date has.

The question of whether to honor a claimant's assignment of EAJA fees when the claimant owes no federal debt starts with consideration of the EAJA and the Ratliff case. The Supreme Court in Ratliff made clear that the language of Section 204(d) of the EAJA, codified at 28 U.S.C. § 2412(d), means what it says—an award of fees and expenses under the EAJA is to the "prevailing party." Ratliff, 130 S.Ct. at 2524-25. The Court in Ratliff determined that attorneys do not have a right to direct payment under the language of subsection (d)(1)(A). Id. at 2527. Thus, the Government had a right to an administrative offset against the attorney fee award for certain debts the litigant owes to the federal government under the Treasury Offset Program ("TOP"). Id. at 2524; see 31 U.S.C. § 3701 et seq.

The Ratliff decision did not address whether the language of the EAJA prevented the Commissioner from paying attorney fees to the attorney when the litigant assigns the right of payment. To the contrary, the following language from Ratliff seemed to endorse the government's practice of honoring assignments of attorney fees by litigants who do not have a federal debt:

> As the Government explains, it most often paid EAJA fees directly to attorneys in cases in which the prevailing party had assigned its rights in the fees award to the attorney (which assignment would not be necessary if the statute rendered the fees award payable to the attorney in the first instance). The fact that some such cases involved a prevailing party with outstanding federal debts is unsurprising given that it was not until 2005 that the Treasury Department modified the TOP to require offsets against "miscellaneous" payments such as attorney's fees awards. And as Ratliff admits, the Government has

-17-

> since continued the direct payment practice only in cases where "the
> plaintiff does not owe a debt to the government and assigns the right
> to receive the fees to the attorney."  The Government's decision to
> continue direct payments only in such cases is easily explained by the
> 2005 amendments to the TOP, and nothing about the Government's
> past payment practices altered the statutory text that governs this case
> or estopped the Government from conforming its payment practices
> to the Treasury Department's revised regulations.

Ratliff, 130 S. Ct. at 2258-29 (emphasis added); see also Matthews-Sheets, 2011 WL 3437029, at
*5.

To be sure, the language of the EAJA does not contemplate payment of attorney fees to

attorneys, but rather to the prevailing party.  But the EAJA language does not foreclose or

preclude such a payment directly to counsel.  The Court in Ratliff recognized that it is "the

nonstatutory (contractual and other assignment-based) rights that typically confer upon the

attorney the entitlement to payment of the fees award the statute confers on the prevailing

litigant." Id. at 2529.  Plaintiff Johnson executed such an assignment of his right to fees and

expenses to his counsel.

The question then becomes whether the government must or should honor the assignment

when it has no right to administrative offset.  The EAJA neither compels nor bars the

government from doing so.  At the time of Ratliff and in some cases since, the Commissioner has

chosen to honor such an assignment when the litigant owes no federal debt.  See id. at 2528-29;

Wigginton, 2011 U.S. Dist. LEXIS 39233, at *2-3; Coleman, 2011 U.S. Dist. LEXIS 22017, at

*3; Hood, 2011 U.S. Dist. LEXIS 4174, at *2.

The concurring opinion in Ratliff and other Supreme Court cases recognize the obvious:

"[t]he point of an award of attorney's fees, after all, is to enable a prevailing litigant to pay her

attorney." Ratliff, 130 S. Ct. at 2530-31 (Sotomayor, J., concurring) (citing Missouri v. Jenkins,

-18-

491 U.S. 274, 285 (1989), and <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435 (1983)). The "practical

reality" is that attorneys are the beneficiaries and should be the "ultimate recipients" of awards of

attorney's fees to prevailing parties. <u>Ratliff</u>, 130 S. Ct. at 2529 (citing <u>Venegas v. Mitchell</u>, 495

U.S. 82, 86 (1990)). After all, such attorney's fees are earned by the attorney and not by the

litigant. A pro se litigant is not entitled to an EAJA award at all. In a case of this nature, where

the litigant is claiming an inability to work full time due to a disability and may be experiencing

financial stress, disregarding an assignment to make payment of the attorney fee directly to the

litigant may result in the litigant "stiffing" the attorney and receiving a windfall. <u>See</u> Barbara

Samuels, <u>Social Security Disability Claims: Practice and Procedure</u> § 21:138.1 (2nd ed., Aug.

2010). The underlying purposes and policies of the EAJA are better served by honoring such an

assignment when the litigant owes no other federal debt. <u>See</u> <u>Ratliff</u>, 130 S. Ct. at 2530-2533

(Sotomayor, J., concurring); <u>see also</u> <u>Matthews-Sheets</u>, 2011 WL 3437029, at *5 (explaining that

when a litigant who owes no debt to the federal government assigns her EAJA award to her

attorney, a failure to honor this assignment "would just create a potential collection problem for

the lawyer.")

A basic rule of contract law is that "[a]n assignment of a right is a manifestation of the

assignor's intention to transfer it by virtue of which the assignor's right to performance by the

obligor is extinguished in whole or in part and the assignee acquires a right to such

performance." Restatement (Second) of Contracts § 317 (1981). In the present case, both parties

agree that Johnson assigned his right to EAJA attorney's fees to his lawyer.[4] Paying the fee

---

[4] Johnson did so through his fee agreement signed when he hired counsel in this matter
(Doc. 20-4) and in an affidavit and assignment. (Doc. 20-5).

-19-

award, minus any offset, directly to Johnson's attorney, in accordance with Johnson's intent, is not inconsistent with Ratliff. Indeed, by honoring Johnson's instructions, this Court recognizes that the fee award belongs to Johnson. Thus, this Court will allow the Government a 60 day period to determine whether any portion of the EAJA fee award in this case is subject to offset and to remit to Johnson's attorney the balance due after any appropriate offset is applied.

## IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Johnson's Motion for Attorney's Fees and Costs (Doc. 20) and Johnson's Supplemental Motion for Attorney's Fees and Costs (Doc. 25) are granted. It is further

ORDERED that Johnson is entitled to fees in the amount of $8,685.73 in attorney's fees, $494.33 in sales tax, $18.24 in expenses, and $27.00 in costs.[5] It is further

ORDERED that the Social Security Administration shall determine within 60 days whether Johnson has outstanding federal government debt. If Johnson has no federal government debt, then the full award shall be issued to Johnson's counsel. If Johnson has

---

[5]The Commissioner does not dispute the amount of attorney's fees, but rather asks that this Court award postage and tax as an expense, not as a cost. In response to Johnson's supplemental motion, the Commissioner asked that the $47.40 in sales tax on the attorney's fees be treated as an expense. The Commissioner does not ask that the $446.83 in sales tax on the attorney's fees be treated as an expense. It is unclear why the Commissioner asks that the taxes on the first set of attorney's fees be treated as fees but the taxes on the supplemental attorney's fees be treated as an expense. The Court will designate the postage and the taxes on the costs as expenses. Because the general practice of the District of South Dakota is to award taxes on attorney's fees as part of those fees, see, e.g., Platt v. Astrue, No. 08-5090, 2010 U.S. Dist. LEXIS 87767 (D.S.D. Aug. 24, 2010); Rowland v. Astrue,, No. 08-5076, 2010 U.S. Dist. LEXIS 46957 (D.S.D. May 12, 2011), this Court will award the tax on attorney's fees as part of the attorney's fee rather than as an expense. The Court will designate the postage and the taxes on the costs as expenses, the photocopies as costs, and the attorney's fees and applicable tax and the supplemental attorney's fees and applicable tax as expenses.

outstanding federal government debt, then the amount of that debt shall be offset from the award and the difference shall be issued to Johnson's counsel.

Dated September 23, 2011.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE